UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARTINE THOMAS, *et al.*,
                      Plaintiffs,

-v-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, *et al.*,
                      Defendants.

---

24-CV-3904 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Martine Thomas and Scott Thomas, individually and on behalf of their son, A.T., bring this suit against Defendants the New York City Department of Education ("DOE") and Melissa Aviles-Ramos, in her official capacity as DOE Chancellor.[1] The Thomases allege that Defendants violated A.T.'s rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401, *et seq.*, and its implementing regulations, by failing to comply with the orders of the state's impartial hearing officer ("IHO").

Before the Court are cross-motions for summary judgment. For the reasons that follow, the Thomases' motion is denied, and Defendants' motion is granted in part.

I.    **Background**

    A.    **Factual Background**

Only one dispute remains in this case: whether the Thomases are entitled to

---

[1] The Clerk of Court is directed to amend the case caption as set forth above. The present action was originally filed against the DOE and David C. Banks in his official capacity as DOE Chancellor. (*See* ECF No. 1.) However, the current Chancellor is Melissa Aviles-Ramos. Pursuant to Federal Rule of Civil Procedure 25(d), Aviles-Ramos is automatically substituted as a named defendant.

reimbursement for the full transportation costs they incurred for A.T. for the 2022-2023 school year, or whether reimbursement is proper for only the days on which A.T. actually attended school in person. (*See* ECF No. 29 at 3.) The Court's recitation of facts therefore hews to that question and draws from the undisputed facts in the IHO's Findings of Fact and Decision ("FOFD").[2] (ECF No. 1-1 ("FOFD").)

At the time of the IHO's review, A.T. was a sixteen-year-old child with Dandy-Walker syndrome, "a brain-based disability where the cerebellum does not develop normally." (FOFD at 3.) As a result of this condition, A.T. "has severe impairments" in cognition, motor skills, and sensory processing, and he is "non-verbal and non-ambulatory." (*Id.*)

After disagreeing with the DOE's public school placement for A.T., the Thomases filed a due process complaint on November 22, 2022, and unilaterally placed A.T. at a private school called the International Institute for the Brain ("iBrain"). (*See id.* at 3-4.) A.T.'s parents also signed a contract with Sisters Travel and Transportation Services, LLC ("Sisters Travel") to cover A.T.'s transportation to school and back during the 2022-2023 school year. (*See* ECF No. 31 ("Mem.") at 13-14; ECF No. 32-1.) This contract provides that each morning and afternoon trip "will be billed as a flat rate of $273.00" and that these costs "will be based on school days, whether student used services or not." (ECF No. 32-1 at 3 (capitalization altered).)

To adjudicate A.T.'s due process complaint, IHO Natasha Pierre conducted four days of proceedings. (FOFD at 3.) At those proceedings, the DOE "did not submit documentary evidence and did not present witness testimony." (*Id.*) The Thomases provided the testimony of

---

[2] The Court waived the requirement of submitting Local Rule 56.1 statements, as is the standard practice in IDEA cases that are based on an undisputed administrative record. *See, e.g., N.K.M. on behalf of G.M. v. Rye City Sch. Dist.*, No. 23-CV-1109, 2024 WL 4803941, at *1 n.2 (S.D.N.Y. Nov. 15, 2024) (citing *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)).

two witnesses and produced a series of documents, including, as relevant here, a document titled "Transportation Agreement" dated October 3, 2022. (*See id.* at 3, 9.)

The IHO determined that the DOE had failed to provide A.T. with a free and appropriate public education ("FAPE"), and that the Thomases had met their burden of proving that iBrain was a proper unilateral placement for their child. (*Id.* at 6.) The IHO also determined that because the Thomases had cooperated with the DOE throughout the development of A.T.'s Individualized Education Program ("IEP"), the balance of the equities favored tuition reimbursement. (*See id.* at 7-8.) The IHO thus ordered the DOE to fund A.T.'s iBrain tuition for the 2022-2023 year, as well as "the costs of transporting [A.T.] to and from [iBrain]" that year. (*Id.* at 8.)

Sisters Travel began to transport A.T. to school on October 3, 2022. (Mem. at 27.) However, due to the present dispute about what kind of transportation the IDEA requires and what exactly the IHO mandated that the DOE fund, DOE has refused to pay Sisters Travel for its invoices, and there is currently a "total outstanding balance of $90,090.00 for A.T.'s special transportation services during the 2022-2023 school year." (*See id.*)

**B.    Procedural History**

The Thomases commenced this action on May 20, 2024. (ECF No. 1 ("Compl.").) On August 22, 2024, the parties stipulated that the DOE would pay for A.T.'s tuition at iBrain and the transportation costs for the 2023-2024 school year. (ECF No. 29 at 3.) The parties then set a briefing schedule to resolve the sole remaining question "concerning the scope of DOE's obligations to fund [A.T.'s] transportation costs for the 2022-2023 school year." (*See id.*) The Thomases moved for summary judgment on September 9, 2024 (ECF No. 30), seeking full reimbursement for the contract they had signed with Sisters Travel, and Defendants filed a cross-motion for summary judgment on October 4, 2024 (ECF No. 39), arguing that the DOE need

3

only fund transportation on the days when A.T. was physically present at school. The Thomases opposed the cross-motion on October 23, 2024. (ECF No. 42 ("Opp.").) Defendants then replied in further support of their cross-motion and in opposition to the Thomases' motion on November 12, 2024. (ECF No. 48.)

## II.     Legal Standard

"IDEA actions generally are resolved by summary judgment." *S.H. v. N.Y.C. Dep't of Educ.*, No. 10-CV-1041, 2011 WL 666098, at *2 (S.D.N.Y. Feb. 15, 2011). Unlike typical summary judgment motions, however, in an IDEA action, "the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 328 n.2 (2d Cir. 2024) (quotation marks omitted). Because of this, "unlike in an ordinary summary judgment motion, the existence of a disputed issue of material fact will not necessarily defeat the motion." *Bd. of Educ. of N. Rockland Cent. Sch. Dist. v. C.M.*, No. 16-CV-3924, 2017 WL 2656253, at *7 (S.D.N.Y. June 20, 2017), *aff'd* 744 F. App'x 7 (2d Cir. 2018) (summary order).

The IDEA provides a federal right of action for "[a]ny party aggrieved by the findings and decisions" of a final administrative body, such as the IHO in the present case. *See* 20 U.S.C. § 1415(i)(2)(A). The IDEA further mandates that a reviewing court:

>  (i)     shall receive the records of the administrative proceedings;
>  (ii)    shall hear additional evidence at the request of a party; and
>  (iii)   basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

*Id.* § 1415(i)(2)(C). "The Supreme Court has noted that the IDEA's requirement that the reviewing court receive the records of the administrative proceedings 'carries with it the implied requirement that due weight shall be given to these proceedings.'" *Ferreira*, 120 F.4th at 332 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

"Significantly, '[a] court may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies.'" *Davis v. Banks*, No. 22-CV-8184, 2023 WL 5917659, at *3 (S.D.N.Y. Sept. 11, 2023) (quoting *Hidalgo v. N.Y.C. Dep't of Educ.*, No. 20-CV-98, 2021 WL 2827037, at *5 (S.D.N.Y. July 7, 2021)).

### III.    Discussion

#### A.    IDEA Requirement

The Thomases argue that both the IDEA and "controlling case law" require the DOE to pay for A.T.'s transportation to iBrain and back home, "whether or not the rides are 'actually provided' or 'actually taken.'" (Mem. at 18 (capitalization altered).) That is, even on days when A.T. stays at home and learns remotely, or takes an extended vacation, the DOE would be required to fund transportation to the tune of $546 per day.

The IDEA, on its face, does not necessarily require this outcome. While the IDEA does require the provision of "transportation" in order "to assist a child with a disability to benefit from special education," 20 U.S.C. § 1401(26)(A), it provides no further mandate about what kind of "transportation" must be offered. Surely, to mean anything, that subsection must require that the DOE fund adequate transportation that ensures a student gets to and from school. So, "if the [Sisters Travel] contracts are consistent with industry norms and Plaintiffs had no meaningful choice but to contract to pay for services without regard for whether students utilized the services," the IDEA would require the DOE to fund that transportation. *See Davis*, 2023 WL 5917659, at *5. However, if there is an alternative to the Sisters Travel model that permits the DOE to fund transportation on only the specific days A.T. actually goes to iBrain, that service would also satisfy the IDEA's requirements. And it would be reasonable and fiscally responsible for the DOE to demand such a tailored service, if it exists.

The case law on which the Thomases rely does not suggest that the IDEA always

5

encompasses transportation regardless of a student's actual use. (*Cf.* Mem. at 19-20.) *L.V. v. New York City Department of Education* does not address the issue of transportation, or related services under the IDEA, at all. No. 03-CV-9917, 2021 WL 663718 (S.D.N.Y. Feb. 18, 2021); *see also Banks*, 2023 WL 5917659, at *5 (making the same distinction). And this Court in *Abrams v. New York City Department of Education* did not state that providing rides regardless of whether a student uses them is a right protected by the IDEA, but merely interpreted the mandates of a specific IHO pendency order, which made no distinction based on whether transportation services were actually rendered. *See* No. 20-CV-5085, 2022 WL 523455, at *4 (S.D.N.Y. Feb. 22, 2022). The same is not true here.

Ultimately, whether or not the DOE has provided A.T. adequate transportation hinges upon factual determinations. That is, a fact-finder must determine whether it is possible for A.T. to find adequate transportation that operates on a per-ride payment, or whether the market in New York City is confined to transportation services with flat fees like Sisters Travel, meaning that the DOE's requirement of a per-ride payment would effectively prevent A.T. from getting transportation to iBrain. Because the IHO is best equipped to pursue further fact finding, *see Davis*, 2023 WL 5917659, at *5, and balance competing educational policies with which the Court is comparatively unfamiliar, *see Ferreira*, 120 F.4th at *330, the Court remands this claim to the IHO to pursue further fact finding.

### B. IHO Determination

The Thomases also argue that the FOFD itself mandates full reimbursement of the Sisters Travel annual costs, regardless of whether A.T. was actually taking the daily rides. (Mem. at 15.) The IHO's FOFD orders the DOE "to fund the costs of transporting the Student to and from the Private School during the 2022/2023 school year." (FOFD at 8.) But beyond that command, the IHO provided no explanation of what exactly "transporting the Student to and from" iBrain

6

entails.  (*See generally* FOFD.)

The parties dispute whether funding transportation "to and from" iBrain means that the DOE must pay for the entire annual transportation contract the Thomases signed with Sisters Travel, or whether it means that the DOE must only fund such transportation for the days A.T. actually attended iBrain in person.  (*See* ECF No. 40 ("Cross-Mot.") at 5.)  Defendants argue that their interpretation would require the Thomases or iBrain to produce "proof of A.T.'s [daily] attendance at iBrain" before the DOE reimburses the Thomases for the expenses they paid to Sisters Travel.  (*Id.*)  Should the Court find the IHO's command ambiguous, Defendants ask the Court to remand the case back to the IHO for clarification.  (*See id.* at 15.)

This Court is not the first in this District to face this exact question of FOFD interpretation.  Defendants point to two recent cases in which Judges Furman and Cronan were asked to interpret identical language in IHO FOFDs: that the DOE pay for transport "to and from" iBrain.  (Cross-Mot. at 6.)  Both judges held that the language was ambiguous, and both remanded the cases for clarification.  *See Davis*, 2023 WL 5917659, at *5-6; *Donohue v. Banks*, No. 22-CV-8998, 2023 WL 6386014, at *11-12 (S.D.N.Y. Sept. 30, 2023).  The Court agrees and orders the same relief.

Without any more context from the IHO, both the Thomases and the DOE "proffer plausible interpretations of the relevant language." *Davis*, 2023 WL 5917659, at *5.  After all, as the Thomases argue, the phrase "to and from" iBrain could reasonably cover an annual contract with a transportation company if the IHO determined that such a payment was an appropriate way to effectuate the IDEA-covered "related service" of transportation to an appropriate private school.  (See Mem. at 15-16.)  However, that phrase could also reasonably mean that the DOE is responsible for only daily transportation that physically takes A.T. "to and

7

from" iBrain, rather than covering the days where he learns from home, for example.[3] (*See* Cross-Mot. at 40.) Without any more context or explanation from the FOFD, "[t]he language of the applicable orders alone does not afford a clear answer." *Davis*, 2023 WL 5917659, at *5.

The Thomases argue that this Court's opinion in *Abrams* supports their reading of the FOFD. (*See* Mem. at 20.) However, *Abrams* presented a different question of interpretation in a different circumstance. *See* 2022 WL 523455, at *5. There, IHOs had issued pendency orders mandating that the DOE fund "[s]pecialized transportation (i.e., adult supervision – nurse, air conditioning, limited time travel not to exceed sixty (60) minutes, and a wheelchair-accessible lift bus)" from July 10, 2018 "through such time as the due process proceeding in this matter is concluded." *See, e.g.*, Exhibit 1A at 36, *Abrams*, No. 20-CV-5085 (ECF No. 92-1); Exhibit 1O at 17, *Abrams*, No. 20-CV-5085 (ECF No. 92-18). The DOE then proceeded to pay the flat monthly transport costs of each student, regardless of student attendance. *See Abrams*, 2022 WL 523455, at *1-2. However, when "New York closed schools in response to the COVID-19 pandemic" in March 2020, the DOE "suspended funding . . . for each student's transportation . . . services." *Id.* at *2. Thus, the question for the Court was whether the IHO pendency orders permitted the DOE to cut off transportation funding mid-year despite the fact that the parents were bound by a one-year contract with Sisters Travel. This Court held that the language of the IHO FOFD required payment throughout the months when schools were forcibly closed, noting that the only limitation in the FOFD was that travel time could not exceed sixty minutes. *See id.* at *4.

There are key differences in the case at hand. First, here, unlike in *Abrams*, the DOE has

---

[3] The parties have provided no information about how often iBrain's students are learning at home rather than physically in the classroom. However, the Thomases' submission suggests that remote learning does take place at iBrain at least some of the time. (*See* Mem. at 15 n.3.)

never agreed to pay for A.T.'s transportation regardless of whether he used it. (*See* Mem. at 27-28.) This Court's holding in *Abrams* responded to the fact that the DOE had unilaterally changed its transportation reimbursement policy for over a dozen families of severely disabled children more than half-way through the school year due to an unexpected global pandemic. Here, however, the DOE has consistently refused to pay the flat rate Sisters Travel charges since they first started charging the Thomases in October 2023, giving the Thomases plenty of notice to find a new carrier or re-negotiate the terms with Sisters Travel. (*See id.*) Second, the terms of the FOFD at issue here differ from those in *Abrams*. The *Abrams* FOFD mandated that the DOE pay for "[s]pecialized transportation" from July 10, 2018 until "such time as the due process proceeding in this matter is concluded," and the only qualifying language was the limitation on travel time, which could not exceed sixty minutes. *See, e.g.*, Exhibit 1A at 36, *Abrams*, No. 20-CV-5085 (ECF No. 92-1); Exhibit 1O at 17, *Abrams*, No. 20-CV-5085 (ECF No. 92-18). Here, however, the IHO has added the qualifying language that the DOE must fund transportation "to and from" iBrain. (*See* FOFD at 8.) *Abrams* does not shed any light on whether "to and from" means that the DOE is required to pay only for A.T. literally going to and from iBrain, or whether the DOE must pay the annual flat rate of Sisters Travel. *See also Davis*, 2023 WL 5917659, at *4-5 (distinguishing *Abrams* on the same basis); *Donohue*, 2023 WL 6386014, at *8 (same); *Zimmerman v. Banks*, No. 23-CV-9003, 2024 WL 4882370, at *5 (S.D.N.Y. Nov. 25, 2024) (same); *Araujo v. N.Y.C. Dep't of Educ.*, No. 20-CV-7032, 2023 WL 5097982, at *5 (S.D.N.Y. Aug. 9, 2023) (same).

The Court thus denies the Thomases' motion for summary judgment on transportation costs for the 2022-2023 school year and remands the case to the IHO for further clarification of

what funding is required to support transportation "to and from" iBrain.⁴ If the IHO clarifies that the DOE need fund transportation for A.T. for only the days on which he is present at school, the IHO should determine whether this would require iBrain to submit data to prove in-person attendance, and what form the data should take.⁵

### IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED and Defendants' motion is GRANTED insofar as they moved for a remand.

This case is hereby REMANDED to IHO Natasha Pierre for further proceedings consistent with this Opinion and Order.

The Clerk of Court is directed to terminate the motions at Docket Numbers 30 and 39, and to close this case.

SO ORDERED.

Dated: April 30, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

⁴ Because the Court remands this case, the Thomases' request "to make a subsequent motion for costs and reasonable attorneys' fees" (*see* Opp. at 4) is denied as moot.

⁵ The Thomases state that iBrain does not keep attendance records that denote whether a student learned in person at iBrain or at home. (Mem. at 15 n.3.) While the Court is skeptical that requiring the collection of such data would be unreasonably onerous, that is the kind of educational policy question the IHO is best equipped to answer. *See Ferreira*, 120 F.4th at 330.